CEIL HARRIS, Appellant, v MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, Respondent.

First Department, June 7, 1988

### APPEARANCES OF COUNSEL

*Peter B. Croly* of counsel *(Ronald S. Platt, P. C.,* attorney), for appellant.

*Lawrence A. Silver* of counsel *(Albert C. Cosenza,* attorney), for respondent.

## OPINION OF THE COURT

Asch, J.

After attending a concert at Avery Fisher Hall, plaintiff Ceil Harris boarded a bus at the corner of 63rd Street and Columbus Avenue. The bus was crowded and plaintiff alleged that she was forced to stand in the front, next to a handrail near the windshield of the vehicle, with a crowd of people pressing behind her. According to the plaintiff, the bus traveled at a high rate of speed and then suddenly stopped, causing the plaintiff to be thrown into the handrail with the crowd thrown against her. As a result, plaintiff claims that she broke three ribs and suffered a massive hematoma which required surgery. Although the plaintiff claims she gave the details of the accident to a police officer who assisted her and who gave her his name and shield number on a piece of paper, no aided report was ever filed nor did the plaintiff ever provide this information to the defendant. Plaintiff, in response to a request for witnesses from the defendant, claimed she was the sole witness.

Defendant then moved for summary judgment, which was granted by the IAS court in reliance upon *Mystal v New York City Tr. Auth.* (App Term, 1st Dept, No. 82-647). The court found that plaintiff's affidavit asserting the bus came to a sudden short stop, standing alone, was insufficient to make out a prima facie case of negligence, since there appeared to be no other evidence to support it.

After motion for renewal and reargument was made by the plaintiff, the court granted renewal but adhered to its original decision, holding that the fact that no-fault payments were made by defendant to plaintiff did not provide the necessary corroboration that the sudden stopping of the bus was so forceful or unusual as to give rise to an actionable claim.

Summary judgment should properly be granted in negligence cases only in rare instances "since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination" *(Ugarriza v Schmieder,* 46 NY2d 471, 474).

The case before us was not such a rare instance.

"Proof that a conveyance came to a sudden stop without showing that it was unusually violent or that there was more

than the usual and ordinary jerk incident thereto is not sufficient to establish negligence in an action by a passenger for injuries * * *

"Evidence that a streetcar or bus made a sudden, unusual, and violent stop resulting in injury to a passenger has been held to make out a prima facie case of negligence requiring the carrier to come forward with some credible proof to explain the reason and necessity for such sudden, unusual, and violent stop." (17 NY Jur 2d, Carriers, § 471, at 543-544.)

No "hard and fast" rule can be formulated as to precisely what amount of jerking or jolting of a streetcar or bus will give rise to an inference of negligence and, conversely, what amount of such jerking or jolting is usual and ordinary, incidental to the operation of such vehicle. "Sudden jerks and jolts in the movement of railroad trains or street-cars are generally accepted as among the usual incidents of travel, which every passenger by experience has learned to expect to some extent. At precisely what point such violent movements lose their character as incidents reasonably to be expected during the course of travel and assume the status of actionable negligence is a question of fact to be determined in the light of the surrounding circumstances." (Annotation, *Motor Carrier's Liability for Injury to Passenger by Sudden Stopping, Starting, or Lurching of Conveyance*, 57 ALR2d 5, § 1, at 11.)

In an action where there were no vacant seats and a young boy, forced to stand on the rear platform of a train, was thrown violently against a gate on the platform by an unusually violent lurch or jerk of the train, which caused the railing to give way and the plaintiff to fall to his death, the Court of Appeals found that an issue of fact existed with regard to the negligent operation of the train and reversed a directed verdict for the defendant: "Whether the jerk or lurch was unusual and violent or the contrary was sharply contested and raised a question of fact. If out of the ordinary and unusual, the sudden jerk was evidence warranting the imputation of negligence in the operation of the train *(Gardner* v. *Central Park, North & East River R. R. Co.,* 218 N.Y. 753; *Futoranski* v. *Nassau Electric R. R. Co.,* 227 N.Y. 638)." *(Trudell v New York R. T. Corp.,* 281 NY 82, 85.)

Accordingly, recovery may be had by the plaintiff if the movement of the vehicle is unusual or violent. What is the quantum of proof necessary to establish a prima facie case on this issue however?

The doctrine espoused in *Mystal (supra),* that there must be other proof of acts or physical facts to warrant a finding that the conveyance was propelled forward with unusual or unnecessary force beyond the plaintiff's "naked statement", stems from language in *Taylor v Westchester St. Transp. Co.* (276 App Div 874), where the Second Department opined that: "[T]he testimony of the respondent that the bus 'lurched forward' and that it 'snatched forward,' without other tangible proof that the bus was propelled forward with unusual or unnecessary force, and without other evidence of acts or of physical facts to warrant such a finding, was insufficient to establish negligence upon appellant's part. *(Dwyer* v. *Auburn & Syracuse Elec. R. R. Co.,* 131 App. Div. 477, 479; *Waddy* v. *Brooklyn Heights R. R. Co.,* 156 App. Div. 30, 31; *Weinmann* v. *Murray,* 256 App. Div. 1109; *Fish* v. *Brooklyn & Queens Tr. Corp.,* 246 App. Div. 843; *Quinn* v. *Colonial Motor Coach Corp.,* 266 N. Y. 584; *Johnson* v. *Berkshire St. Ry. Co.,* 292 Mass. 311.)"

That case, however, did not involve a motion for summary judgment but, instead, reversed a verdict rendered after trial. It appears to place upon the plaintiff an unusual burden of proof in a negligence case. Thus, the Appellate Term in *Mystal (supra),* as noted, found that corroboration of the plaintiff's testimony is required to make out a prima facie case. However, a fair reading of *Taylor (supra)* shows that reliance upon the language quoted above has been distorted in requiring such "corroboration". Further, the facts and the cases cited in *Taylor* stand only for the reasonable proposition that the plaintiff must demonstrate at trial that the movement of the vehicle was something out of the usual and ordinary. A mere characterization by the plaintiff that the movement of the vehicle was unusually violent is too general and indefinite in the absence of any other supporting evidence. However, the cases relied upon do not require a higher degree of proof in this type of case as opposed to other negligence cases.

Thus, in *Dwyer v Auburn & Syracuse Elec. R. R. Co.* (131 App Div 477, *supra),* a verdict in favor of the plaintiff was set aside where the evidence showed that the plaintiff, who knew the usual stopping place of the streetcar, attempted to alight when the car had not yet reached that stopping place. The Fourth Department found there was no evidence of negligence by the motorman in the operation of the car, noting that descriptions that the car " 'went ahead with a jerk * * *

quite a jerk' " and that it started up with a "lurch and jerk" were "too indefinite and general" to establish such negligence on the part of the motorman (*supra,* at 479). Although the court added that "[w]hen the charge is that the car was negligently operated in that it was suddenly propelled forward with unusual and unnecessary force tangible proof of such force should be given, instead of the characterization of the witness, which may be exaggerated beyond the actual occurrence" (*supra,* at 480), the actual description of the force as characterized by the witnesses in that case was not an unusual or unnecessary one, as recognized by the court, which remanded for a new trial.

In *Waddy v Brooklyn Hgts. R. R. Co.* (156 App Div 30, *supra),* the court again set aside a verdict for the plaintiff after trial, and ordered a new trial. The evidence showed that the car in which the plaintiff was riding was decelerating as it passed around a "loop" to reach its stopping point, and the plaintiff should have known from his own past experience that the train would first decelerate and then accelerate. Therefore, the court found that although plaintiff was thrown off the streetcar, there was no violent, unusual starting up of the car that caused the fall.

In *Weinmann v Murray* (256 App Div 1109, *supra),* on the other hand, the Second Department reversed a judgment dismissing a complaint where there was evidence that other passengers in a conveyance were thrown about and that there was a hissing sound from which it could be inferred that the air brakes had been applied violently. The court found this evidence presented a jury question as to whether the defendant was negligent. It distinguished cases where passengers were moving about in a train at the time of a claimed sudden jerk or cases in which there was no evidence that other passengers were thrown about.

In *Fish v Brooklyn & Queens Tr. Corp.* (246 App Div 843, *supra),* where the dismissal of a complaint at the close of the entire case was upheld, the sparse facts given simply note that the plaintiff fell to the floor of a trolley car, as he was moving in the direction of the door, when "the car stopped suddenly" (*supra).* Thus, it appears that plaintiff failed to show unusual violence in the stop.

Similarly, in *Quinn v Colonial Motor Coach Corp.* (266 NY 584, *supra),* the Court of Appeals reversed the Appellate Division and Trial Term and dismissed the complaint where

the only evidence was plaintiff's testimony that a violent lurch of the bus caused his arm to move from the open window of the bus and strike some hard object outside.

In *Newell v Brooklyn Bus Corp.* (280 NY 650), the plaintiff was the sole witness on her behalf. She testified that as she stepped down to get off a bus, it " 'jerked suddenly' ", causing her to fall. A verdict in her favor was affirmed, indicating that the testimony of the plaintiff alone can be sufficient to establish a cause of action.

The law as presented in *Taylor (supra)*, and the other cases cited by it and by the IAS court herein, indicates only that a cause of action in favor of the plaintiff should not be sustained where there is no evidence other than a plaintiff's characterization of the movement of the vehicle as a "lurch" or "jolt" or sudden stop, where such "lurch" is not unusual, but, in fact, should have been anticipated. These cases should not be interpreted to require plaintiff to produce other witnesses to the accident, which would be an unnecessary and unreasonable burden in establishing a prima facie case.

In addition, none of the cases discussed herein concerned the grant of summary judgment prior to the presentation of plaintiff's proof at trial.

The plaintiff here has done more than to merely characterize the stopping of the bus as sudden and unexpected. She stated in her affidavit that the vehicle was traveling at a very high rate of speed when it came to a sudden, unusual and violent stop. She further alleged that a crowd of people standing behind her was thrown against her by the sudden stop, crushing her against the railing. Thus, she was not the only person on the bus who was affected by the sudden stop. The force of the propulsion of plaintiff into the railing in the vehicle, caused by the movement of the crowd because of the sudden stop, was apparently great enough to crush plaintiff's ribs. In addition, whether or not the bus was permitted to become overcrowded raised another issue with respect to defendant's negligence *(see, Ligon v International Ry. Co.,* 269 App Div 809).

Accordingly, plaintiff succeeded in raising issues which cannot be decided upon the motion for summary judgment, but must await a plenary resolution.

Although defendant attacks the credibility of plaintiff, whether or not her allegations are true is for a jury to decide, not a court upon a summary judgment motion.

Accordingly, the appeal from the order of the Supreme Court, New York County (David B. Saxe, J.), entered March 31, 1987, which granted defendant's motion for summary judgment, should be dismissed as superseded, without costs. The order of the Supreme Court, New York County (David B. Saxe, J.), entered May 26, 1987, which granted renewal and reargument, and upon renewal and reargument adhered to the original determination, should be modified, on the law, solely to the extent of denying defendant's motion for summary judgment, and otherwise affirmed, without costs or disbursements.

SANDLER, J. P., SULLIVAN, MILONAS and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on May 26, 1987, unanimously modified, on the law, solely to the extent of denying defendant's motion for summary judgment, and otherwise affirmed. The appeal from the order of said court entered on March 31, 1987 is unanimously dismissed as superseded by the appeal from the order entered on May 26, 1987, all without costs and without disbursements.