2  Rocco Cornacchia et al., Appellants, v Mount Vernon Hospital et al., Defendants, and Gloria Tang et al., Respondents. — In a medical malpractice action, plaintiffs appeal from a judgment of the Supreme Court, Westchester County (Dickinson, J.), entered February 22, 1982, which was in favor of defendants Skok and Tang, upon dismissal of the complaint as against them at the close of plaintiffs' case. Judgment modified by deleting the provisions which granted judgment to defendant Gloria Tang against the plaintiffs dismissing the complaint and awarded Tang costs and disbursements. As so modified, judgment affirmed, without costs or disbursements, and as between the plaintiffs and defendant Gloria Tang the action is severed and new trial granted. The instant action was commenced to recover damages, *inter alia,* for personal injuries sustained by plaintiff Rocco Cornacchia (hereinafter plaintiff) as a result of the alleged negligence of defendants during and after brain surgery. At the conclusion of plaintiffs' case, the trial court dismissed the complaint against defendants Dr. Gloria Tang and Dr. Paul Skok based upon plaintiffs' failure to establish a prima facie case. On appeal, plaintiffs contend, *inter alia,* that the trial court's determination was erroneous since their proof was sufficient for the jury to find that (1) defendant Tang, the anesthesiologist during plaintiff's surgery, was responsible for plaintiff's dentures becoming lodged in his esophagus, and (2) defendant Skok, the neurosurgeon who performed the operation upon plaintiff, was responsible for the actions of Dr. Acharya, a resident who was assigned by defendant hospital to assist Skok. The day after surgery, Acharya allegedly failed to properly secure a drain inserted in plaintiff's scalp, which thus receded into the brain. We agree that the trial court erred in dismissing the complaint against defendant Tang. The testimony of plaintiffs' expert, Dr. Eviatar, together with the invocation of the doctrine of *res ipsa loquitur,* permits a jury to infer negligence and causation, sufficient to establish a prima facie case against Tang based on circumstantial evidence. In order for *res ipsa loquitur* to be applied the following conditions are required: (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence, (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant, (3) it must not be due to any voluntary action or contribution on the part of plaintiff, and (4) evidence as to the true explanation of the event must be more readily accessible to the defendant than to the plaintiff (see *Fogal v Genesee Hosp.,* 41 AD2d 468, 474). Once these preconditions are established through the plaintiff's proof, *res ipsa loquitur* may be charged to the jury (*Fogal v Genesee Hosp., supra,* p 476). At bar, Dr. Eviatar testified that plaintiff's dentures could only have become lodged in his esophagus if his gag reflex was suppressed, his throat muscles were relaxed, and an outside force was applied. This particular combination of conditions occurred only during the time that Dr. Tang had placed an endotracheal tube in the patient's trachea to facilitate the administration of anesthesia before surgery. Thus, based upon Dr. Eviatar's testimony, the jury may have concluded that the injury could not have occurred in the absence of the negligence of Dr. Tang; she was in exclusive control of the agency causing the injury; and plaintiff, who was necessarily unconscious, could not have contributed to the occurrence in any way. Although there was evidence introduced which rebutted Eviatar's theory and any inference of negligence on the part of Dr. Tang, it does not negate the evidence which, if

believed, could lead the jury to infer negligence under *res ipsa loquitur* (*Fogal v Genesee Hosp., supra*, p 476). Accordingly, plaintiffs are entitled to a new trial against Dr. Tang. However, the case against Dr. Skok was properly dismissed. The only testimony regarding his liability came from Dr. Gordon, the doctor member of the medical malpractice panel. The panel had unanimously recommended a finding of liability against Dr. Skok. The recommendation was introduced at trial and read to the jury. Dr. Gordon's testimony "with reference to the recommendation of the panel only" (Judiciary Law, § 148-a, subd 8) at best established that the panel's finding of liability was based on a theory of vicarious liability, in that the attending surgeon is "always responsible for the actions of the resident". This theory of liability was never raised by plaintiffs in their complaint, and the bill of particulars specifically stated that there were no claims of vicarious liability. Thus, regardless of whether the recommendation of the malpractice panel, together with the testimony of the panel member with respect thereto, is sufficient to establish a prima facie case of negligence, the case against Dr. Skok could not be sustained on a theory not asserted by plaintiffs. We note that Dr. Gordon did make reference to the theory of recovery set forth by plaintiffs, that is, negligent instruction and supervision of Dr. Acharya by Dr. Skok. However, the panel physician's testimony, alone, was not sufficient to establish that Dr. Skok's failure to instruct Dr. Acharya to secure the drain constituted a deviation from good and accepted medical practice (see *Bernstein v Bodean,* 53 NY2d 520, 529). As a result, plaintiffs failed to make out a prima facie case of negligence against Dr. Skok. We have considered plaintiffs' other contentions and find them to be without merit. Damiani, J. P., Mangano, Thompson and Boyers, JJ., concur.

